FILED

2017 Feb-03  PM 02:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| KIMBERLY TIDMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | 4:15-cv-2210-JEO |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

In her remaining claims in this action, Plaintiff Kimberly Tidmore asserts

that Defendant Bank of America, N.A. ("BANA") is liable under Alabama law for

alleged malfeasance in connection with BANA's servicing of her mortgage loan

and handling her applications for a loan modification.  (*See* Doc.[1] 1-1 at 9-22

("Complaint" or "Compl.")).  Originally filed in Alabama state court, the action

was removed to this court based on diversity (Doc. 1) and assigned to the

undersigned United States Magistrate Judge pursuant to the court's general order

of reference dated January 1, 2015.  The parties thereafter consented to an exercise

of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc.

---

[1]References herein to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and enumerated on the docket sheet by the Clerk of the Court.  Pinpoint citations are to the page of the electronically-filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" of the document presented for filing.

23).  The cause now comes to be heard on BANA's motion to dismiss, pursuant to

FED. R. CIV. P. 12(b)(6).  (Doc. 13).  The parties have fully briefed the motion

(Docs. 13, 25, 26), which is now ripe for decision.  Upon consideration, the court

concludes that BANA's motion to dismiss is due to be granted.

## I.    REVIEW STANDARDS

The FEDERAL RULES OF CIVIL PROCEDURE apply to an action after removal.

FED. R. CIV. P. 81(c); *Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1992); *Duncan v.*

*CitiMortgage, Inc.*, 617 F. App'x 958, 960 (11th Cir. 2015).  Rule 12(b)(6) of

those rules authorizes a motion to dismiss on the ground that the complaint fails to

state a claim upon which relief can be granted.   On such a motion, the "'issue is

not whether a plaintiff will ultimately prevail but whether the claimant is entitled

to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d

962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).

The court assumes the factual allegations of the complaint are true and gives the

plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation*

*Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

In diversity cases, federal courts apply state substantive law and federal

procedural law.  *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.,*

*P.A.*, 781 F.3d 1245, 1259-60 (11th Cir. 2015).  In such cases, the sufficiency of a

complaint challenged by a motion to dismiss is reviewed under federal, rather than state, pleading standards, but considering the substantive elements of the claims under state law. *Id.* at 1260-61. Rule 12(b)(6) is read in light of Rule 8(a)(2), FED. R. CIV. P., which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

3

## II.    BACKGROUND[2]

In 2003, Plaintiff took out a loan to purchase a home in Hokes Bluff, Alabama, in Etowah County, executing a 30-year note and granting a mortgage on the property.  (Compl. ¶¶ 1, 6).  "In or about late 2009, Plaintiff began the process of applying for a loan modification" with BANA, which was then servicing her mortgage loan.  (*Id.* ¶ 7).  She says that, on or about December 25, 2009, she received a phone call from a BANA representative approving her for a Temporary Payment Plan ("TPP") for three to five months that would reduce her monthly payment from $1,010.16 to $967.20.  (*Id.* ¶¶ 6, 8).  Plaintiff says she made timely payments pursuant to the TPP from January 2010 until June 2010.  (*Id.* ¶ 9).  Despite doing so, she says she continued to receive "almost daily calls" between January and June 2010, in which BANA told her it had no record of her having received a TPP and that her account was seriously delinquent.  (*Id.*)

After failing to receive news regarding the status of her loan modification application, Plaintiff requested information from BANA with respect to where her loan payments were being applied, but she was not given an explanation.  (Compl.

---

[2]The background summary in this section is based on the Complaint and is stated in the light most favorable to Plaintiff as the non-moving party, consistent with the standard of review on a motion to dismiss under Rule 12(b)(6).  Accordingly, they are the "facts" for purposes of the instant motion only and may not be the actual facts.

¶ 10).  Plaintiff told BANA that she would cease payments until she was given transcripts of her payment history and was allowed to speak with a supervisor. (*Id.*)  On or about October 10, 2010, BANA contacted Plaintiff and notified her that if she did not make a payment immediately her loan would be accelerated. (*Id.* ¶ 11).  Plaintiff made the demanded payment.  (*Id.*)

On or about February 7, 2011, Plaintiff supplied BANA with another loan modification application, at BANA's request.  (*Id.*)  BANA confirmed receipt of that application and allegedly told Plaintiff that it would not accepted payments while her new application was under review.  (*Id.*)  In or around April 2012, BANA told Plaintiff that her latest loan modification application had been denied. (*Id.* ¶ 14).  Plaintiff says that in or around September 2012, she received another TPP from BANA, covering October to December 2012.  (*Id.* ¶ 15).  BANA told Plaintiff that if she made those three payments that her loan would be brought up to date.  (*Id.*)  Plaintiff says she then paid the new TPP through January 2013.  (*Id.* ¶ 16).  Plaintiff states that although she attempted thereafter "to reach out numerous times to check the status of her most recent modification application, [she] was not able to get any information" on it.  (*Id.* ¶ 16).

On or about December 26, 2013, Plaintiff received a notice that the servicing of her mortgage loan had been transferred from BANA to Nationstar

5

Mortgage, LLC ("Nationstar").  (*Id.* ¶ 17).  In her Complaint, Plaintiff alleges that "on or about January 23, *2013*, Nationstar informed Plaintiff [inaccurately]... that no payment [had] been made [on her account] since June 8, 2010."  (*Id.* ¶ 18 (emphasis added)).  In her opposition brief, however, Plaintiff seeks to clarify that she actually received such notice from Nationstar "on January 23, *2014*," characterizing the earlier date in the Complaint as a "clerical error."  (Doc. 25 at 2, ¶ 4 & n. 1 (emphasis added)).

Similarly, Plaintiff pleads that Nationstar eventually approved her for a loan modification "in March *2014*" (*id.* ¶ 22 (emphasis added)), but she now says in her brief that such actually occurred "in March *2015*."  (Doc. 25 at 2, ¶ 5 & n. 2 (emphasis added)).  In any event, Plaintiff alleges that, under that offered modification, her new principal balance would have been over $50,000.00 more than on her initial mortgage loan from 2003 and included $62,958.74 in "new money" because it did not take into consideration payments she had made on the loan from 2003 to 2010 or the "numerous TPP agreements" between Plaintiff and BANA.  (Compl. ¶¶ 22-23).  It also extended the maturity date on Plaintiff's loan from 2033 to 2055.  (*Id.* ¶¶ 6, 22).  Because Plaintiff found such terms unsatisfactory, she declined to execute the loan modification.  (*Id.* ¶ 25).

In early September 2015, Nationstar sent Plaintiff a statement that she had

overdue payments of $87,658.07.  (*Id.* ¶ 27).  On or about September 18, 2015, Plaintiff received a foreclosure notice stating that the owner of the note, The Bank of New York Mellon Corporation, as trustee for CWABS, Inc. asset-backed certificates, Series 2003-BC3 ("Mellon"), would be conducting a foreclosure sale of her home on October 26, 2015.  (*Id.* ¶ 29).

On October 23, 2015, Plaintiff initiated this action by filing her Complaint in the Circuit Court of Etowah County, Alabama, asserting claims against BANA, Nationstar, Mellon (hereinafter collectively "Defendants") and fictitiously identified defendants.  (Compl. at 1).  She has pled her claims in eight counts, which she has captioned as follows: "Temporary Restraining Order" (Count I); "Preliminary and Permanent Injunction" (Count II): "Negligent, Reckless and/or Wanton Conduct" (Count III); "Negligent Undertaking" (Count IV); "Negligent, Reckless and/or Wanton Training and/or Supervision" (Count V); "Breach of the Implied Covenant of Good Faith and Fair Dealing" (Count VI), "Promissory Estoppel" (Count VII), and "Invasion of Privacy" (Count VIII).  On December 2, 2015, Defendants removed the action to this court, based on diversity.[3]  (Doc. 1).

---

[3]Under 28 U.S.C. § 1441, defendants may remove an action originally filed in state court to federal district court where the latter would possess jurisdiction.  Under 28 U.S.C. § 1332(a)(1), federal district courts have jurisdiction over civil actions that (1) are between citizens of different states and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.  To that end record sufficiently supports that, at all times, there has been complete diversity between the parties (*see* Doc. 1 ¶¶ 7-10), and that the amount-in-controversy requirement is met.

Subsequently, Plaintiff voluntarily dismissed all claims against Nationstar and Mellon (Docs. 15, 16), leaving BANA as the sole remaining defendant. BANA has now filed a motion to dismiss all claims against it. (Doc. 13). Plaintiff has filed a brief in opposition (Doc. 25), to which BANA has filed a reply. (Doc. 26).

## III.   DISCUSSION

### A.     Counts I, II, III, VI, and VII

BANA raises assorted arguments in support of dismissing all claims in Counts I, II, III, VI, and VII of the Complaint. Plaintiff now expressly concedes that all of those claims are indeed due to be dismissed. (Doc. 25 at 13). Accordingly, those claims will be dismissed with prejudice. As a result, Plaintiff's only remaining claims at issue in the case are those against BANA for "negligent undertaking" in Count IV; for "negligent, reckless and/or wanton training and/or supervision" in Count V; and for "invasion of privacy" in Count VIII. BANA motion seeks the dismissal of those claims as well, but Plaintiff opposes such action. Thus, the court now turns to consider the parties' respective arguments relating to the claims in Counts IV, V, and VIII.

---

(*Id.* ¶¶ 12-15).

8

**B.**   **Counts IV ("Negligent Undertaking") and V ("Negligent, Reckless and/or Wanton Training and/or Supervision")**

In Count IV, captioned "Negligent Undertaking," Plaintiff alleges that "Defendants ... voluntarily undertook to assist Plaintiff in resolving mortgage difficulties, mitigation of her mortgage and/or avoiding foreclosure action on the Property in writing, in the form of various letters and emails sent to Plaintiff." (Compl. ¶ 69).  "By so undertaking," Plaintiff asserts, "Defendants owed Plaintiff the duty to do so with reasonable care" and that "Defendants breached that duty." (*Id.* ¶ 68).  In particular, she claims that, "[i]n the process of undertaking to assist Plaintiff from suffering a foreclosure and avoiding increasing delinquency, Defendants negligently, recklessly and/or wantonly serviced the loan by, including but not limited to, failing to timely and properly process the modification applications, failing to properly identify where payments had been applied and how figures had been derived." (*Id.* ¶ 69).  In Count V, Plaintiff raises associated claims alleging that "Defendants" were negligent "and/or" wanton in the training "and/or" supervision of their agents and employees. (*Id.* ¶¶ 72-74).

BANA moves to dismiss these claims, arguing that Alabama law does not recognize a negligence or wantonness cause of action with regard to servicing or handling a loan or mortgage once it has been executed.  *See U.S. Bank, N.A. v.*

9

*Shepherd*, 202 So. 3d 302, 315 (Ala. 2015) (*citing James v. Nationstar Mortg, LLC*, 92 F. Supp. 3d 1190, 1198-1200 (S.D. Ala. 2015)).  Indeed, as the Alabama Supreme Court has explained, "mortgage servicing obligations are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public."  *Id.* at 315 (quoting *James*, 92 F. Supp. 3d at 1200).  Thus, an alleged breach of obligations created by the parties' agreement may give rise only to a claim for breach of contract, not a tort claim for negligence or wantonness.  *See id.; see also Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) ("Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract.  Indeed, 'a negligent failure to perform a contract ... is but a breach of the contract.'" (*quoting Vines v. Crescent Transit Co.*, 85 So.2d 436, 440 (Ala. 1956)); *Bush v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 324993, at *8 (N.D. Ala. Jan. 27, 2016).  That principle also extends to bar claims of negligent and wanton training and supervision of agents or employees that purportedly resulted in the loan servicer's negligent or wanton performance of duties deemed contractual in nature.  *See James*, 92 F. Supp. 3d at 1201; *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235 (N.D. Ala. 2013).

Plaintiff acknowledges the above legal principles, conceding that "lenders

10

and/or servicers do not owe borrowers a generalized duty of care and are only required to perform their contractual obligations according to the mortgage." (Doc. 25 at 5).  Nevertheless, she insists that her tort claims in Counts IV and V are viable because they "relate to BANA's alleged negligence, misconduct, and/or inaction, during the modification process, which spanned from 2009 through December 2013."  (*Id.*)  More particularly, she maintains that "BANA's decision to solicit, request, and or offer to review Plaintiff for a loan modification was not a contractual obligation contained in the mortgage."  (*Id.*)  Rather, she says that "[b]y offering to review Plaintiff's loan modification applications, and guiding her through the modification process, BANA [voluntarily] 'undertook' a duty outside the conventional role as servicer and outside the contractual confines of the mortgage."  (*Id.*)  As a result, Plaintiff insists, "BANA was then obligated to review the applications and handle the modification process with reasonable care."  (*Id.*)  And Plaintiff asserts that she has sufficiently pled that BANA breached that duty by,

> consistently provid[ing] conflicting and confusing communications, correspondence, and statements, if any[;] approv[ing] and accept[ing] trial period payments which Plaintiff avers were never applied to her loan[;] [losing] modification paperwork[;] provid[ing] no feedback and or status updates[; refusing to] accept and/or retun[ing] payments without an explanation[;] lull[ing] Plaintiff into a sense of calm and trust that BANA was working to modify her loan[;] and forc[ing]

Plaintiff into an insurmountable delinquency.

(Doc. 25 at 6 (*citing* Compl. ¶¶ 9-16, 18, 23, 29-33, 68, 69)).  In turn, Plaintiff

conceives such tort claims in Count IV to authorize associated claims in Count V

for negligent and wanton training and supervision.  (*Id.* at 8).

Plaintiff is correct that "Alabama law does recognize certain circumstances

under which a duty to undertake with due care can attach to a lender's voluntary

actions that 'create[s] a "special relationship" with respect to a borrower,

*Williamson* [*v. Realty Champion*, 551 So. 2d 1000, 1002 (Ala. 1989)], that is

'independent of their contractual obligations.'"  *Ogletree v. Bank of Am., N.A.*,

2012 WL 4340024, at *6 (N.D. Ala. Sept. 17, 2012).  For instance, the Alabama

Supreme Court has recognized that a lender may incur a duty of care to the

borrower in connection with its voluntary performance of a property inspection for

the borrower's benefit.  *Williamson v. Realty Champion*, 551 So. 2d 1000, 1002

(Ala. 1989); *Rudolph v. First S. Fed. Sav. & Loan Ass'n*, 414 So. 2d 64, 71 (Ala.

1982).  That Court has also held that a defendant lender who agreed to assist

plaintiff prospective borrowers in applying to a federal agency for a government

subsidized loan could be liable for negligently misrepresenting to them that the

agency had approved the loan, which prompted the plaintiffs to commence

construction.  *First Fed. Sav. & Loan Ass'n of Hamilton v. Caudle*, 425 So. 2d

1050, 1052 (Ala. 1982); *see also Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1219 (Ala. 2008) (stating in dicta that the defendant bank "arguably undertook a duty" of care with respect to processing loan application materials submitted on the plaintiff's behalf to the United States Small Business Administration); *Lambert v. First Fed. Mortg.*, 47 F. Supp. 3d 1310, 1319-20 (N.D. Ala. 2014) (finding that bank might be liable in negligence for failing to timely send loan application on the plaintiff's behalf to the United States Department of Agriculture).

However, to the extent that Plaintiff's claims of "negligent undertaking" are founded upon BANA's purported failure to apply monthly installment payments, to keep accurate records of Plaintiff's account, and to provide Plaintiff with information on her account, those alleged duties are still fundamentally contractual in nature, associated with the servicing of the loan.  That is, any such legal duties would arise from the initial mortgage agreement and promissory note and, to the extent they exist, any subsequent temporary payment plans or other modifications of the loan agreement, not from the fact that Plaintiff asked BANA to modify the loan agreement.  *See Blake*, 845 F. Supp. 2d at 1209-10; *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244-45 (N.D. Ala. 2013); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1234 (N.D. Ala. 2013).  Therefore, such allegations

13

do not state a viable negligence claim under Alabama law, nor can they support subsidiary claims of negligent and wanton training and supervision. *See id.*

But even insofar as Plaintiff's negligence claims are founded in part on acts or omissions related strictly to BANA's allegedly inept handling of Plaintiff's loan modification requests, the circumstances pled by Plaintiff do not support the existence of a tort duty under Alabama state law. It is assumed that BANA's acts and omissions dealing narrowly with processing her loan modification requests do not fall within the scope of BANA's contract-based duties in "servicing" the mortgage loan itself. *See Alverson v. PNC Bank*, 2014 WL 7146995, at *3 (S.D. Ala. Dec. 15, 2014) ("While servicing a mortgage account involves duties created by contract, the same cannot be said for processing a request for a loan modification."). However, as explained below, the fact that a financial institution has indicated a willingness to consider a borrower's request for a loan modification does not mean that the law implies a duty of reasonable care as it relates to the processing, handling, or consideration of that application.

"In general, parties are free to contract as they see fit, on any terms regarding a subject matter in which they have an interest, provided that the contract does not impose obligations that are contrary to statute, public policy, or an established rule of the common law." 174 Am. Jur. 2d Contracts § 222. Thus,

14

outside the confines of an agreement, a financial institution typically does not owe a duty to lend money at all, nor to help extricate a borrower from its financial difficulties by modifying the terms of an existing loan agreement. *See Southland Bank*, 21 So. 3d at 1218; *Cahaba Seafood, Inc. v. Central Bank of the South*, 567 So. 2d 1304, 1306 (Ala. 1990); *Tharp v. Union State Bank*, 364 So. 2d 335, 337 (Ala. Civ. App. 1978); *cf. George v. Federal Land Bank of Jackson*, 501 So. 2d 432, 436 (Ala. 1986) (holding that a mortgagee "was under no duty to insure that it retain[ed] enough property under its mortgage to insure that at any point during the term of the mortgage defendants could restructure their loan"). Moreover, the Alabama Supreme Court has indicated that a financial institution generally owes no duty of care to a prospective borrower in connection with its consideration and processing of a loan application, at least insofar as the institution is acting within its conventional role as a lender of money. *See Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 3d 665, 680 (Ala. 2001) (affirming summary judgment for bank on negligence claim alleging that bank breached a duty "to properly process the [plaintiff's] loan request," noting that the "the record shows only that [the bank] indicated that it would consider [the plaintiff's] offer to borrow money and then failed to consider that offer to the extent that [the plaintiff] contends would have been appropriate."); *Flying J Fish Farm v. Peoples Bank of*

15

*Greensboro*, 12 So. 3d 1185, 1193-94 (Ala. 2008) (holding bank owed to borrower no fiduciary or other tort-based duty to use reasonable care to determine that borrower would have the means to repay the loan); *accord Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 163 Cal. Rptr. 3d 804, 820 (2013) ("[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (quoting *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096, 283 Cal. Rptr. 53 (1991)).  And given that lenders are no more legally mandated to modify the terms of an existing loan agreement than they are to lend money in the first place, there is likewise no reason that the law should impose a duty of care as it relates to processing a request for a loan *modification.  See Alverson*, 2014 WL 7146995, at *4 ("The facts in the Complaint describe inept handling of Plaintiffs' loan modification request, but they do not support a claim for negligence or wantonness under Alabama law."); *see also Curry v. Bank of Amer. Home Loans Servicing*, 802 F. Supp. 2d 105, 108 (D.D.C. 2011); *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709 (9th Cir. 2016); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 779 (4th Cir. 2013).  And in that vein, Plaintiff's allegations regarding BANA processing of her applications for a loan modification

16

do not support that BANA was acting on the Plaintiff's behalf in relation to a third party or otherwise outside the scope of a conventional lender-borrower relationship.  As such, this case is distinguishable from *Williamson*, *Rudolph*, and *Caudle*, the Alabama state decisions primarily relied upon by Plaintiff.  (*See* Doc. 25 at 8).  Rather, this case is more analogous to *Armstrong* and *Alverson*, which held that financial institutions acting in a mere lending capacity owed no duty of reasonable care in connection with processing or considering a request to make or modify a loan agreement, respectively.

The court notes, however, that the case upon which Plaintiff actually relies most heavily is *Ogletree*, a decision of this court by Judge Hopkins.  (*See* Doc. 25 at 7-8).  In *Ogletree*, plaintiff mortgagors asserted negligence claims against their mortgagee (which happened to be BANA) and the loan servicer on the theory that such defendants had voluntarily undertaken a duty to use reasonable care in connection with their consideration and processing of a request by the plaintiffs to be allowed to conduct a short sale of the property in an effort to avoid foreclosure. 2012 WL 4340024 at *4.  The plaintiffs appear to have claimed that the defendants breached that duty (1) by failing to advise the plaintiffs until four months into the short-sale review process that any such transaction would have to

17

be an arm's length one[4] and (2) presumably also by ultimately denying the

plaintiffs' short-sale request itself.  *See id.* at *2-5, 7.  The defendants sought

summary judgment on multiple grounds, including that they owed no tort duty in

connection with the failed short sale of the property.  *Id.* at *4.  Acknowledging

that the plaintiffs' claim rested on Alabama's "undertake a duty" doctrine, Judge

Hopkins observed that neither the parties nor her own research had disclosed a

controlling case in which that principle had "played a role in the relationship

between a borrower and a lender and/or a mortgage servicing company in a short

sale situation."  *Id.* at *5.  However, relying upon *Rudolph*, *Williamson,* and

*Caudle*, Judge Hopkins found that, "contrary to Defendants' stance, Alabama law

does recognize certain circumstances under which a duty to undertake with due

care can attach to a lender's voluntary actions that creates a special relationship

with respect to a borrower that is independent of their contractual obligations."

*Ogletree*, 2012 WL 4340024 at *6 (internal quotation marks, brackets, and

citations omitted).  She further concluded that the negligence claim based on the

"Defendants' voluntary offer to assist Plaintiffs with the short sale process," *id.* at

*7, was "unrelated to loan servicing" and was thus not governed by the only

---

[4]The plaintiffs' contemplated short sale of the property in *Ogletree* was going to be to the mother of one of the plaintiffs, at a price $57,833.73 less than the plaintiffs owed on their mortgage loan.  *See Ogletree* at *2.

relevant caselaw cited by the defendants, holding that Alabama law does not recognize a cause of action for "negligent loan servicing." *Id.* at \*6. Judge Hopkins continued stating that, the defendants' "lack of legal development material to the merits of Plaintiff's negligence claim ... fails to meet their burden as the movants." *Id.* And being "guided by *Rudolph*, *Caudle*, and *Williamson*," Judge Hopkins concluded that the plaintiffs "negligent undertaking claim is potentially viable under Alabama law," and that the defendants were not entitled to summary judgment on the basis that they necessarily owed no duty "to assist Plaintiffs with due care in their efforts to procure a short sale." *Id.* at \*7. Nevertheless, Judge Hopkins then went on to grant summary judgment on the claims (as well as subsidiary negligent training and supervision claims) on the alternative grounds that the evidence did not support either that the defendants acted unreasonably or that any of their conduct complained of had proximately resulted in damage to the plaintiffs. *Ogletree*, 2012 WL 4340024 at \*7-9.

To the extent that Plaintiffs interpret *Ogletree* as affirmatively holding that the defendants assumed a duty of due care by "voluntarily" considering or processing the plaintiffs request for a short sale, Plaintiffs read the case too broadly. For starters, Judge Hopkins's discussion regarding the existence of a duty was dicta insofar as she ultimately granted summary judgment on other

19

grounds.  *See generally Powell v. Thomas*, 643 F.3d 1300, 1304-05 (11th Cir. 2011) ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us" (internal quotation marks and citation omitted)).

Further, her decision not to grant summary judgment in *Ogletree* based on the defendants' duty-based argument also appears to have rested on a matter of summary judgment procedure, rather than any affirmation that a duty actually existed under Alabama substantive law.  Judge Hopkins correctly recognized, based on *Rudolph*, *Williamson*, and *Caudle*, that there are some circumstances in which a lender may be deemed to have voluntarily assumed a duty of care relative to a borrower.  She also found that the defendants' arguments and citations to authority failed to confront the basic premise of plaintiffs' argument, which she had accepted, that the administration of their requests for a short sale was not part of the defendants' contract-based loan-servicing obligations.  And by that gap in the defendants' argument, Judge Hopkins ruled, they had failed to satisfy their burden as the movants for summary judgment, because they had not affirmatively shown that no duty of care existed as a matter of Alabama law.  *See generally* Rule 56(a), FED. R. CIV. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  And while Judge Hopkins did

pronounce the "negligent undertaking claim" to remain at least "potentially viable," she notably did not purport to make any definitive ruling that a duty of care affirmatively did exist.  Indeed, it was not necessary to do so.  Rather, it was enough at the summary judgment stage merely to say that the defendants, as the movants, had failed to establish that no duty existed.

Of course, even if *Ogletree* actually unambiguously held that, under Alabama law, a mortgagee or loan servicer assumes a duty of due care by agreeing to process or otherwise consider a borrower's request to alter the borrower's obligations under an existing loan agreement, the undersigned would not be bound by that decision.  *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991).  Moreover, to the extent *Ogletree* could be read to suggest that such a tort duty would exist under those conditions, the undersigned would disagree with it. Ultimately, asking a lender to allow a short sale, as in *Ogletree*, amounts in substance to a request by the borrower to modify his obligations under an existing loan agreement.  It is therefore not materially different for present purposes than a borrower asking his lender to allow a change in the terms of repayment under an existing loan agreement.  In either scenario, the lender is under no common-law duty to agree to an alteration and may instead simply insist, indeed, for good reason, bad reason, or no reason at all, that the borrower comply with the existing

21

contract.  Accordingly, under the principles of *Armstrong* (which is not cited in *Ogletree*), *Flying J Fish Farm*, and *Alverson*, so long as the financial institution acts only in a conventional lending capacity, it should incur no duty of care to the borrower with respect to its consideration and processing of a request to modify a loan agreement, including to allow a short sale of the property.

Based on the foregoing, BANA's motion to dismiss the "negligent undertaking" claims in Count IV of the Complaint is due to be granted.  That motion is also due to be granted as it relates to any subsidiary claims of negligent and wanton training and supervision in Count V to the extent they are predicated on the claims in Count IV.

### C.   Count VIII ("Invasion of Privacy")

Finally, BANA also moves to dismiss Count VIII, in which Plaintiff asserts that "Defendants," a designation that includes not only BANA but also Nationstar and Mellon, are liable for "invasion of privacy," in particular, the "false-light" variant of that broader cause of action.  *See generally S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006) (addressing the tort of invasion of privacy as consisting of "four limited and distinct wrongs," including "putting the plaintiff in a false, but not necessarily defamatory position in the public eye").   To that end, after generally incorporating by reference all preceding allegations of the Complaint,

22

Plaintiff pleads in Counts VII as follows:

> 86.  As a result of the actions and conduct of Defendants, both named and fictitious, Plaintiff was placed in a false light by having her home published for foreclosure sale multiple times.

> 87.  Defendants' conduct was highly offensive to Plaintiff and to any reasonable person, and was willful,  reckless, wanton and/or made with malice, resulting in Plaintiff being unreasonably placed in a false light by insinuating that she was not credit worthy and majorly delinquent on her mortgage, when in actuality it was through no fault of her own.

> 88.  As a proximate result of Defendants' unreasonable placing of Plaintiff in a false light, Plaintiff has suffered the damages set out in Paragraph 66 above.

(Compl. ¶¶ 86-88).  BANA moves to dismiss this claim, arguing, *inter alia*, that Plaintiff's allegations with respect to BANA's conduct do not establish the elements of a false-light claim under Alabama law.

Regarding the elements of a false-light claim, the Alabama Supreme Court has explained:

> " ' "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

>> " ' "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

>> " ' "(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." ' "

23

> *Butler v. Town of Argo*, 871 So. 2d at 12 (quoting *Schifano v. Greene
> County Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala.1993),
> quoting in turn *Restatement (Second) of Torts* § 652E (1977)).
>
>       "A false-light claim does not require that the information made
> public be private," but it does require that "the information ... be
> false."  871 So. 2d at 12.  *See Restatement (Second) of Torts* § 652E,
> cmt. a. (1977).  Thus, falsity is the *sine qua non* of a false-light claim.
> Moreover, unlike defamation, truth is not an affirmative defense to a
> false-light claim; rather, "falsity" is an element of the plaintiff's claim,
> on which the plaintiff bears the burden of proof. [Nathan E. Ray,
> Note, *Let There Be False Light: Resisting the Growing Trend Against
> an Important Tort*, 84 Minn. L.Rev. 713, 736 (2000)] ("false light
> plaintiffs therefore bear [a] heavier burden [than defamation
> plaintiffs] because they must make an affirmative showing of falsity
> rather than leaving it to defendants to justify the offensive
> statement").

*Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004).

      In moving to dismiss this claim, BANA understands it to be framed by the

theory that Plaintiff was placed in a false light by publication of notices that her

home was to be sold at a foreclosure sale.  However, BANA observes that the only

foreclosure sale referenced in the Complaint is one that was to be held on October

26, 2015, for which Plaintiff says she received a notice on or about September 18,

2015.  (*See* Compl. ¶¶ 2, 28).  BANA further notes that Plaintiff expressly

acknowledges that the servicing of her mortgage loan was transferred from BANA

to Nationstar in December 2013.  (*Id.* ¶ 17).  Therefore, BANA posits, Plaintiff's

allegations do not plausibly support that BANA published any foreclosure sale

notice, defeating her false-light claim.

The court agrees with BANA that, given Plaintiff's admission that BANA was not servicing her loan after December 2013, her allegations fail to plausibly establish that BANA published a foreclosure sale notice for, or had anything else to do with the administration of, the foreclosure sale in October 2015.  Indeed, Plaintiff does not argue to the contrary in her opposition brief.  (*See* Doc. 25 at 11-12).  Therefore, Plaintiff's cause of action against BANA fails insofar as it is premised upon the theory that BANA published a foreclosure sale notice that put her in a false light.  Accordingly, Plaintiff's false-light cause of action will be dismissed as it relates to any foreclosure sale notice putatively published by BANA.

Plaintiff maintains, however, that she has stated a viable false-light claim in Count VIII, even if not based on BANA's alleged publication of a foreclosure sale notice.  Rather, Plaintiff theorizes the Complaint states a claim to the effect that BANA placed her in a false light by communicating false information to Nationstar when, in December 2013, it assumed BANA's duties in connection with the servicing Plaintiff's loan.  In particular, Plaintiff contends that BANA communicated to Nationstar at that time that she was "majorly delinquent on her mortgage," including that "no payments had been made since June 2010, an untrue

25

assertion." (Doc. 25 at 12).

BANA first replies that Plaintiff's argument "ignores the actual allegations pled in the Complaint and attempts to recast her claim." (Doc. 26 at 7). BANA suggests that, as pled, Plaintiff's false-light cause of action is based solely upon publication of foreclosure sale notices, not BANA's alleged communications to Nationstar regarding the status of Plaintiff's loan account. The court agrees. The allegations in Count VIII do not give BANA fair notice that Plaintiff sought to impose liability based on BANA's communications to Nationstar. Indeed, that Count makes no reference to communications between those parties. To be sure, Plaintiff pleads broadly that Defendants "insinuat[ed] that she was not credit worthy and majorly delinquent on her mortgage." (*Id.* ¶ 87). But fairly read, that allegation is still reasonably understood as arising from and expounding upon Plaintiff's immediately preceding claim that she "was placed in a false light by having her home published for foreclosure sale." (*Id.* ¶ 86). Therefore, the Complaint fails to state a false-light claim as it relates to ostensible communications between BANA and Nationstar regarding the status of Plaintiff's loan account.

Moreover, even assuming the Complaint encompasses a theory of liability arising from BANA's communications to Nationstar, the court agrees with BANA

26

Count VIII remains subject to dismissal because such allegations would not plausibly establish the "publicity" element of a false-light claim.  In *Plott*, the Alabama Supreme Court explicated that element as follows:

> In the context of a false-light claim, "giving publicity" is "making a 'matter ... public, by communicating it to the public at large, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*.' "  *Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (quoting Restatement (Second) of Torts § 652D, cmt. a. (1977) (emphasis added)). "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a *defamation* claim. *Gary v. Crouch*, 867 So. 2d 310, 318 n. 6 (Ala. 2003).  The "publicity" element is not satisfied by the " 'communicat[ion of] a fact ... to a *single person or even to a small group* of persons.' "  *Birmingham News*, 778 So. 2d at 818 (quoting Restatement (Second) of Torts § 652D, cmt. a. (1977) (emphasis added in *Birmingham News*; some emphasis omitted)).

897 So. 2d at 245 (emphasis and parentheticals in original).  And then applying those principles, the *Plott* Court held that "the return by a payor bank of one check stamped 'insufficient funds' to two presenting banks and two merchants does not 'giv[e] publicity to a matter concerning another' within the meaning of the 'publicity' element of a false-light claim."  *Id.*

Similarly here, even assuming BANA conveyed false information about the status of Plaintiff's account to Nationstar, BANA's successor as servicer of the loan, that would not itself rise to the level of giving "publicity" to that information

so as to make it "public knowledge."  Accordingly, Plaintiff's false-light claim in Count VIII is due to be dismissed on this ground as well, as is any negligent and wanton training and supervision claims in Count V that might be predicated on the false-light claim.

## IV.   CONCLUSION

BANA's Rule 12(b)(6) motion to dismiss (Doc. 13) is due to be **GRANTED**.  A separate final order will be entered.

**DONE**, this 3rd day of February, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

28